UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                         :

NANCY GONZALEZ,                      :
                                         :

                    Plaintiff,        :

                                         : **MEMORANDUM DECISION AND**
           - against -               : **ORDER**
                                         :

EXPERIAN INFORMATION SOLUTIONS,  :  26-cv-0380 (BMC)
INC., and EQUIFAX INFORMATION      :
SERVICES LLC,                           :
                                         :

                    Defendants.   :
------------------------------------------------------------ X

**COGAN**, District Judge.

Plaintiff brings this FCRA action based on alleged inaccuracies in her credit report. Her credit report was never given to a third party, and she was never denied a credit line based on the alleged inaccuracies. Nonetheless, plaintiff alleges she has standing under <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413 (2021), because the only reason she never applied for credit was because doing so would have been "futile." Because there is no "futility exception" to <u>TransUnion</u>, and even if there was, her claim that she would have been denied credit is speculative, the complaint is dismissed for lack of standing.

**SUMMARY OF COMPLAINT**

Plaintiff reviewed her credit report about four months before filing this suit. She discovered an account reported as a defaulted Department of Education ("DOE") loan with a balance of $3,413.00. This account was opened without her knowledge or consent and, about a month after the discovery, she notified defendants – two credit reporting agencies – of the inaccuracy. The "dispute package" plaintiff sent defendants included a written statement, a

request for an investigation and removal of the information, and an identity theft report. Nonetheless, the account remained on her report.

Plaintiff wants to attend nursing school.  About two weeks before she filed suit, she received an email from the admissions office of a nursing school she wanted to attend.  The email was a generic recruiting email that appears to have been sent in response to plaintiff giving the school her contact information, and requesting more information from the school.  The admissions office asked plaintiff to call them because it had "a few exciting things to share with you regarding our upcoming start."

By the time plaintiff received that email, she was aware of the inaccuracy on her credit report.  She therefore never applied for student loans (or admission to nursing school, it seems) because, according to her, doing so would have been futile.

## LEGAL STANDARD

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (quotations omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  Ultimately, "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005), but "at the pleading stage, standing allegations need not be crafted with precise detail," Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003).

In the sphere of the FCRA, the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."  TransUnion, 594 U.S. at 434 ("In

2

cases such as these . . . the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer."). The looming possibility that defendants "could have divulged [plaintiff's] misleading credit information to a third party at any moment" makes no difference. Id. at 438.

## DISCUSSION

Plaintiff seems to know she has no standing under TransUnion, given that she never applied for a credit line that was denied because of the alleged inaccuracy. Nonetheless, she attempts to show standing by carving out a "futility exception" to TransUnion.

Because the alleged inaccuracy on her credit report reflects a DOE loan in default, plaintiff contends that applying for student loans would be futile. Under the Higher Education Act, 20 U.S.C. § 1070 *et seq.*, "to receive any grant, loan, or work assistance under this title, a student must [not] be in default on any [federal student] loan." 20 U.S.C. § 1091(a)(3); cf. Salazar v. King, 822 F.3d 61, 69 (2d Cir. 2016) ("Because these [federal student] loans went into default, [plaintiff] was unable to enroll in a business training program at a community college over a decade later.").

On the other hand, it is not at all clear that a falsely reported debt would disqualify an applicant for a student loan. The statute provides that the student "must [not] be in default." It does not define the process for determining whether an applicant is actually in default on a student loan. It does not say that a negative trade line showing a default on a student loan in a credit report is conclusive as to whether the applicant is in default on that loan.

No doubt, had plaintiff not abandoned her pursuit of a student loan, the lending agency would have pulled her credit report and seen the negative trade line. But nothing would have stopped her from contacting the lending agency (as she did here with defendants), explaining that

the trade line is the result of identity theft, and maintaining that she is *not* in default on a student loan.  In fact, DOE regulations provide for these kinds of circumstances.  See 34 C.F.R. § 685.215(a)(1)(iii); see also Pleasant v. Cardona, No. 20-cv-0074, 2022 WL 36130, at *5 (W.D. Va. Jan. 4, 2022) ("[S]everal federal district courts have held that DOE properly applied 34 C.F.R. § 685.215 (or analogous regulations) to identity theft disputes"); Johnson v. U.S. Dept. of Educ., No. 17-cv-2104, 2018 WL 3420016, at *3 (D. Md. July 13, 2018).

TransUnion exists as "floodgates to . . . unmanageable litigation."  Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., 985 F.2d 102, 104 (2d Cir. 1993) (citing Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)).  The core of TransUnion, 594 U.S. at 439, is that "credit files [that are] not disseminated to third-party businesses [inflict no] concrete harm" on an FCRA plaintiff.  See also Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475 (2d Cir. 1995) (No standing because plaintiff "failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency.").

A plaintiff cannot sidestep TransUnion by pointing to hypothetical credit lines she never pursued.  Cf. Simonson v. IQ Data Int'l, Inc., 698 F. Supp. 3d 1055, 1061 (W.D. Wis. 2023) (Finding FCRA standing when plaintiff's "law school denied her request for financial aid [twice], citing as the reason an 'account in collection' on [her] Equifax credit report.").  Doing so would undermine the essential holding of TransUnion, 594 U.S. at 417: "No concrete harm, no standing."

Accordingly, plaintiff has "failed to satisfy the injury-in-fact requirement of Article III [and] the Court lacks subject matter jurisdiction over plaintiff's FCRA claims." Zlotnick v. Equifax Info. Servs., LLC, 583 F. Supp. 3d 387, 392 (E.D.N.Y. 2022).

## CONCLUSION

The complaint is dismissed for lack of subject matter jurisdiction.

**SO ORDERED.**

*Brian M. Cogan*

Dated:   Brooklyn, New York
   February 10, 2026

U.S.D.J.